IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

CAREY PAUL JACKSON; And
JOHNNIE S. JACKSON                                              PLAINTIFFS

VERSUS                                                    2:06cv101KS-MTP

BAYER CORPORATION; And
BAKER'S PHARMACY                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the defendants' Motion for Summary Judgment **[#17]**. The court, having reviewed the motion, being advised that the plaintiffs have failed to respond to the motion or an order entered by the court to show cause for their non-response, the pleadings and exhibits on file and being fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs' claims were initially joined with numerous other plaintiffs in *Mattie Kincaid , et al v. Bayer Corp., et* al filed in the Circuit Court of Jones County, Mississippi. The plaintiffs in *Kincaid* allegedly sustained various stroke injuries after ingesting one or more over-the-counter cough and cold medications manufactured and sold by the defendants when the medications contained Phenylpropanolamine (PPA), a decongestant. The defendants timely removed that case to this court and were

ultimately successful in securing its removal to the Western District of Washington pursuant to an order by the Judicial Panel on Multi-district Litigation (MDL) consolidating all of the PPA cases nationwide.

The MDL court ordered each of the plaintiffs to sever and file an amended complaint detailing their individual allegations against specific defendants. Carey Paul Jackson filed his amended complaint alleging that he had suffered a stroke on September 24, 2000, after ingesting Alka-Seltzer Plus (ASP) (manufactured by Bayer) on the day before. Johnnie S. Jackson, Carey Paul's wife, filed a loss of consortium complaint which was ultimately consolidated with Carey Paul's individual complaint against Bayer.

The plaintiffs' case proceeded through fact discovery while in the MDL court and included the depositions of the plaintiffs and two of Carey Paul Jackson's treating physicians, Dr. Edward Moak (internal medicine) and Dr. Adele Thiel (neurology). That testimony and the medical records establish that Jackson had a left hemisphere cerebral ischemic stroke. He was initially treated by Dr. Moak at King's Daughter's Hospital in Brookhaven, Mississippi and then transferred to St. Dominic Hospital in Jackson, Mississippi, later in the day.

Both of Carey Paul Jackson's treating physicians have testified that the stroke was caused by a combination of high blood pressure, underlying vascular disease, hyperlipidemia, high cholesterol and his history of persistent cigarette smoking. Neither has opined that PPA caused or contributed to the stroke and in fact there is no mention in the medical records of Jackson having taken ASP. One month after the stroke, on October 23, 2000, Jackson had a follow-up visit with Dr. Thiel who characterized his

recovery from a neurological standpoint as "quite well" and noted that he had regained his normal strength without any weakness in his arms or legs and that he had no difficulty in speaking.

This case was remanded to this court in April 2006 for case-specific expert discovery and continued pre-trial proceedings. This court granted the plaintiffs' counsel's motion to withdraw on November 17, 2006, and allowed the plaintiffs to proceed *pro se*. The court entered a case management order on January 10, 2007, which set deadlines for designation of experts, and discovery, among other things. The court entered a follow-up order on January 27, 2007, which emphasized the plaintiffs' responsibility in prosecuting this case. The court admonished the plaintiffs that **"failure to comply with any Order of this Court will be deemed as a purposeful delay and contumacious act by the plaintiff and may result in the dismissal of this case."** (Emphasis in original). To date, the plaintiffs have not produced or designated any specific expert opinion testimony that PPA caused the plaintiffs' alleged injuries and damages. Nor have the plaintiffs responded to the present motion. On August 17, 2007, the court entered a show cause order for the plaintiffs to respond to the summary judgment motion or show why the case should not be dismissed. The plaintiffs have not responded to this order either.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477

U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting*

*Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## PRODUCTS LIABILITY IN MISSISSIPPI

Under Mississippi's version of common law strict liability for unreasonably dangerous products, manufacturers were not considered insurers of the products they produce. Instead, the existence of a product defect has to be established before recovery could be obtained for a resulting injury. *Walton v. Chrysler Motor Corporation*, 229 So.2d 568, 572 (Miss. 1969)(*overruled on other grounds*, *General Motors Corporation v. Howard*, 244 So.2d 726, 728 (Miss. 1971)). *See also, Jones v. Babst*, 323 So.2d 757, 759 (Miss. 1975). Under the common law version of product liability adopted in Mississippi, three elements had to be established by the proof before strict liability could be imposed:

(1) that the plaintiff was injured by the product;

(2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous; and

(3) that the defect existed at the time it left the hands of the manufacturer.

*Early-Gary, Inc. v. Walters*, 294 So.2d 181 (Miss. 1974).

In 1993 Mississippi codified its products liability law and "[s]ince that time, products liability claims have been specifically governed by statute, and a claimant, in presenting his case, must pay close attention to the elements of the cause of action and the liability limitations enumerated in the statute." *Williams v. Bennett*, 921 So.2d 1269, 1273 (Miss. 2006). Under the codified version of products liability, the three elements set forth above are considered part of the *prima facie* products liability case which a claimant must make out in order to go forward in the face of a summary judgment motion. *Id.* ("In general, a claimant must make out a *prima facie* products liability case in Mississippi by showing that a product was defective; that the defect caused the product to be unreasonably dangerous; that the unreasonably dangerous defect caused the harm complained of; and that the defective condition existed at the time the product left the control of the manufacturer or seller.")

Specifically, Miss. Code Ann. § 11-1-63 (Supp. 2005) provides, in pertinent part;

(a)   The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

   (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

      2. The product was defective because it failed to contain adequate warnings or instructions, or

   3.  The product was designed in a defective manner, or

   4.   The product breached an expressed warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

  (ii)  The defective condition rendered the product unreasonably dangerous to the user or consumer; and

  (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a)(i)-(iii).

  The plaintiffs have offered no proof on any of the *prima facie* elements required to proceed beyond summary judgment and specifically, they have failed to offer any proof that PPA caused or contributed to Mr. Jackson's stroke.  They have failed to offer proof on any of the matters which they bear the burden of proof at trial.  In fact, they have not offered any expert proof at all and while it may not be absolutely necessary to offer expert testimony on the issue of defect in all cases, it is, at a minimum, desirable. Additionally, where causation is an issue in a complicated case, such determinations are generally outside the scope of the average experiences and qualifications of most lay jurors and expert testimony is required.  See *Rudd v. Montgomery Elevator Co.*, 618 So.2d 68 (Miss. 1993); *Wyeth Laboratories, Inc. v. Fortenberry,* 530 So.2d 688 (Miss. 1988); *Hickox v. Holleman*, 502 So.2d 626 (Miss. 1987); and *Ford Motor Co. v. Matthews*, 291 So.2d 169 (Miss. 1974).

  The plaintiffs have offered absolutely no testimony showing that PPA caused or contributed to the plaintiffs' alleged injuries and damages.  Failure to offer evidence on a critical matter upon which they bear the burden is fatal to their case.  See, *In Re*

*Municipal Bond Reporting Antitrust Lit., supra.*

IT IS THEREFORE ORDERED AND ADJUDGED that defendants' Motion for Summary Judgment **[#17]** is Granted and that all other pending motions are dismissed as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 4th day of September, 2007.

> *s/ Keith Starrett*
> UNITED STATES DISTRICT JUDGE